NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

RAKEIM SHEROD WARD, *Appellant.*

No. 1 CA-CR 16-0066
FILED 3-9-2017

---

Appeal from the Superior Court in Maricopa County
No. CR2015-001294-001
The Honorable Dean M. Fink, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Christopher V. Johns
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Lawrence F. Winthrop joined.

---

**T H O M P S O N**, Judge:

¶1          This case comes to us as an appeal under *Anders v. California*, 368 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). Counsel for defendant has advised us that, after searching the entire record, he was unable to find any arguable questions of law and has filed a brief requesting this court to conduct an *Anders* review of the record. Defendant was given the opportunity to file a supplemental brief *in propria persona*, but he did not do so.

¶2          In October 2013, Laura Riddle-Strickland told her friend, S.F., about problems she was having with D.F., a man she previously worked for. S.F. offered to "help" her with the situation and they concocted a plan to rob D.F. Strickland wanted to get a hard drive back from D.F. and suggested S.F. steal methamphetamine D.F. allegedly kept in his apartment as well. S.F. told Strickland he would "go get [his] partner" and come back. S.F. returned with defendant and the three further discussed the robbery. The plan was for S.F. and defendant to knock on D.F.'s door, enter the apartment, and steal the hard drive and drugs.

¶3          Later that evening, S.F. and defendant reunited with Strickland and she gave them directions to D.F.'s apartment complex and his apartment. The apartment complex D.F. lived in, however, was divided into two separate addresses, resulting in a duplication of apartment numbers throughout the complex. S.F. and defendant robbed the incorrect apartment.

¶4          T.J. was sitting at his computer in his apartment when he heard someone trying to open his door. Scared, he got his gun and placed it on his desk. Approximately ten to fifteen minutes later, he heard a knock on his door and answered it. Defendant and S.F., who had a gun, forced their way into T.J.'s apartment. Once inside, defendant went to the back bedroom and shut the door while S.F. kept the gun pointed at T.J. and yelled "Where is it at?" T.J. slowly walked backwards towards his desk. He

picked up his gun and shot S.F. twelve times. T.J. ran from the apartment and called the police. S.F. was pronounced dead on the scene.

¶5            Upon hearing the gunshots, defendant jumped out of T.J. 's bedroom window, threw away his shirt and gloves in a nearby dumpster, and told Strickland what had taken place. The two left the apartment complex and police arrested defendant the next day.

¶6            The state charged defendant with first degree felony murder, a class one dangerous felony (count one), attempt to commit armed robbery, a class three dangerous felony (count two), and burglary in the first degree, a class two dangerous felony (count three).

¶7            After a jury trial, defendant was convicted as charged.  The trial court sentenced defendant to life in prison with the possibility of parole after twenty-five years for count one, a presumptive term of 7.5 years in prison for count two, and a presumptive term of 10.5 years in prison for count three. The court ordered the sentences to run concurrently and gave defendant 827 days of presentence incarceration credit.  The court also ordered defendant to pay T.J.  $700 in restitution.

¶8            We have read and considered defendant's *Ander's* brief, and we have searched the entire record for reversible error. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. We find none. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure and the sentences imposed were within the statutory limits. Following this decision, defendant's counsel is released from his obligation under this appeal after informing defendant of its outcome and his future options. *See State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). Defendant has thirty days from the date of this decision to proceed, if he wishes, with an *in propria persona* motion for reconsideration.

¶9          We affirm the convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:   AA